UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

STIFEL, NICOLAUS & COMPANY, INC.

       Plaintiff,

-against-                               Case No. 1:21-cv-04211

INIVATA LTD.

       Defendant.
------------------------------------------------------X

## COMPLAINT

Plaintiff Stifel, Nicolaus & Company, Inc. ("Stifel"), by its attorneys, Murphy & McGonigle, P.C., as and for its Complaint against Inivata Ltd. ("Inivata"), alleges as follows:

## SUMMARY OF ACTION

1. In a written agreement, dated July 22, 2019 (the "Agreement"), Inivata engaged Stifel to act as its financial advisor and financing agent in obtaining various forms of financing. The Agreement required Inivata to pay Stifel a fee in the event that Inivata obtained such financing during the term of the Agreement. On February 4, 2021, Inivata publicly announced that it had closed a transaction in which it had obtained financing in the amount of $35 million (the $35 Million Financing Transaction").

2. The Agreement was in effect as of the closing of the $35 Million Financing Transaction, and indeed the Agreement remains in effect as of the date of this filing, as it has not been terminated by either party. Under the Agreement, the $35 Million Financing Transaction triggered Inivata's obligation to pay a fee to Stifel of 5.5%

of the amount of the transaction, which equals $1,925,000. Inivata was also obligated under the Agreement to compensate Stifel for its out-of-pocket expenses, which totaled $9,367.70. Despite Stifel's demands for payment of the fee and expenses totaling $1,934,367.70, Inivata has refused to make payment.

3. Accordingly, Stifel brings this action for breach of contract to recover the amount of the fee owed, plus its out-of-pocket expenses incurred, as well as the costs incurred by Stifel in collecting these sums, including Stifel's attorneys' fees and expenses, as expressly provided for in the Agreement.

## PARTIES

4. Stifel is a leading global financial services firm providing a wide range of investment banking, securities, investment management, wealth management and credit services. The firm services clients worldwide, including corporations, governments, institutions and individuals. Stifel is incorporated under the laws of the State of Missouri, and maintains its principal place of business in the State of Missouri.

5. Inivata is a global, commercial stage liquid biopsy platform company. Inivata is a foreign corporation organized under the laws of England, and it maintains its global headquarters in Cambridge, England.

## JURISDICTION

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(c). Stifel is a citizen of the state Missouri. Inivata is a citizen or subject of the United Kingdom and is not domiciled in the state of Missouri. The amount in controversy exceeds $75,000.

**VENUE**

7. Venue is proper in this District based on the forum selection clause in the Agreement in which the parties agreed to submit to venue in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Stifel personnel who performed work for Inivata under the Agreement are located in and performed a substantial portion of the work in this District; a substantial part of the events or omissions giving rise to Stifel's breach of contract claim thus occurred in this District.

**FACTUAL ALLEGATIONS**

**The Agreement At Issue**

8. On or about July 22, 2019, Stifel and Inivata entered into the Agreement, which set forth the terms and conditions on which Inivata engaged Stifel to act as financial advisor and financing agent "in seeking, arranging, negotiating and generally advising with respect to the placement, in one or a series of transactions, of equity or equity-linked or debt securities, instruments, or obligations of" the Company[1] (defined in the Agreement as the "Financing"). A copy of the Agreement is annexed as Exhibit A and incorporated herein. The terms of the Agreement were negotiated by the parties. Inivata was represented in the negotiations by independent counsel.

9. Stifel agreed to "endeavor to obtain one or more commitments for the Financing (individually a 'Commitment' and collectively the 'Commitments') from one or more financial institutions or other sources, but excluding any operating companies or their affiliates whose primary interest in such Financing is of a strategic or acquisitive nature." Ex. A, Section I, p. 1.

---

[1] The Agreement defines the "Company" as Inivata Ltd. "together with any present and future and subsidiaries of Inivata Ltd." Ex. A, p. 1 (preamble).

10. Inivata expressly represented and warranted to Stifel in the Agreement, among other things:

> Stifel is hereby granted the right and authority to locate Financing sources and to obtain Commitments during the term of this Agreement. If the Company [Inivata] accepts or otherwise enters into any Commitment during the term of this Agreement . . ., and the Company closes the Financing under such Commitment, <u>whether or not such Financing or Commitment was arranged through Stifel</u> . . ., the Company expressly agrees that Stifel's services have been fully performed as outlined herein, and the Company shall pay Stifel compensation as outlined herein.

Ex. A, Section IIC, p. 2 (emphasis added). In other words, Inivata agreed to pay Stifel the fee prescribed in the Agreement if Inivata closed a Financing transaction during the term of the Agreement <u>regardless of whether Stifel introduced or arranged for the Financing</u>.

11. Inivata also expressly promised that, during the term of the Agreement, it would not initiate or engage in any discussions relating to a Financing, except through either Stifel or Inivata's advisor in Asia. The Agreement specifically provides: "In order that the Company and Stifel can best coordinate efforts to obtain a Commitment satisfactory to the Company, the Company agrees that it will not initiate or engage in any discussions relating to a Financing during the term of this Agreement except through Stifel and RT Capital Management (RT)/CLSA, the Company's Advisor in Asia." Ex. A, Section II, C, p. 2.

12. Inivata agreed to compensate Stifel by paying it a fee equal to 5.5% of the amount of a Financing transaction that closed. More specifically, Inivata agreed to pay a "contingent cash placement fee (the "Placement Fee") equal to 5.5% (550 basis points) of the equity portion of the Commitment" -- with exceptions that are not applicable here (for financing provided by existing or certain specifically identified investors). Ex. A,

4

Section III, A(a), p. 5.  The Agreement stated that the fee is "due and payable to Stifel on the first to occur of (x) the date of the applicable closing or funding of the Financing or (y) the date the Company defaults on or violations any terms or conditions set forth in the accepted Commitment which prevents funding of the Financing."  *Id.*

13.     The Agreement further provides that "[i]f the Placement Fee is not fully paid when due, the Company agrees to pay all costs of collection or other enforcement of Stifel's rights hereunder, including but not limited to attorneys' fees and expenses, whether collected or enforced by suit or otherwise."  Ex. A, Section IIIA(b), p. 5.

13.     Finally, the Agreement did not have a definitive termination date.  The Agreement states that "[t]he term of this engagement will continue until terminated by either party at any time by giving the other party at least 30 days' prior written notice."  Ex. A, Section IV, at p. 6.  Neither Stifel nor Inivata gave notice of termination of the Agreement, and it remains in effect as of the date of this filing.

## Inivata's Transactions

14.     Inivata's Agreement with Stifel excluded Financing obtained from "operating companies or their affiliates whose primary interest in such Financing is of a strategic or acquisitive nature."  Ex. A, Section I, p.1.  Separate and apart from its engagement with Stifel, Inivata entered into a strategic collaboration with NeoGenomics, Inc., ("NeoGenomics") a U.S.-based cancer diagnostics and services company.  As announced on May 26, 2020, NeoGenomics agreed to make a $25 million minority ownership investment in Inivata, with an option to buy the company outright.  That transaction involved the purchase of Inivata's Series C1 shares by NeoGenomics' wholly owned subsidiary.  Inivata entered into that transaction with the assistance of a different

investment banking firm -- not Stifel, and that transaction is not part of Stifel's claim in this case for payment of a fee under the Agreement.

15. Approximately one year later, on May 4, 2021, Inivata announced that it had agreed to be acquired by NeoGenomics -- in accordance with the option to buy the company that Inivata had granted NeoGenomics in May 2020.

16. However, prior to the NeoGenomics acquisition, on February 4, 2021, Inivata publicly announced that it had raised an additional $35 million in a second close of a Series C financing round. Attached as Exhibit B is a copy of Inivata's press release, dated February 4, 2021, publicly announcing the $35 Million Financing Transaction. These funds were not raised from NeoGenomics as part of its strategic collaboration with Inivata, but rather from other parties, including Soleus Capital ("Soleus"), Janus Henderson Investors ("Janus") and Farallon Capital. Two of the lead investors – Soleus and Janus – were firms that Stifel had introduced to Inivata during the course of its engagement under the Agreement.

17. The $35 Million Financing Transaction was a Commitment for Financing (as those terms are defined in the Agreement) that closed while the Agreement remained in effect. The closing of the transaction triggered Inivata's obligation to pay Stifel a fee under the Agreement. Importantly, Inivata's obligation to pay the fee was triggered under the terms of the Agreement "**whether or not such Financing or Commitment was arranged through Stifel**."). Ex. A, Section IIC, p. 2 (emphasis added).

### Stifel's Performance Under The Agreement

18. After Stifel and Inivata entered into the Agreement in July 2019, Stifel worked diligently to locate financing for Inivata, spending hundreds of hours of time

performing analyses, preparing presentations and reaching out to potential investors. Among the investor introductions that Stifel made to Inivata were to Soleus and Janus, although neither was initially interested in entering into a transaction. In late 2019, Inivata chose to focus its attention on entering into a strategic transaction, which it eventually closed with NeoGenomics through another investment banking firm. At no time, however, did Inivata express dissatisfaction to Stifel concerning its work or efforts. And Inivata did not terminate the Agreement with Stifel, even though it had the right to do so on 30 days' notice.

19. In fact, in June 2020, shortly after Inivata's strategic collaboration with NeoGenomics was announced, Inivata's management reached out to Stifel's investment banking team to discuss Stifel's assistance in obtaining follow-on financing. This was perfectly logical as Stifel continued to be engaged as Inivata's financial advisor and financing agent under the Agreement. Although Stifel's investment banking team expressed uncertainty about the possibilities for additional investor interest based on the terms of the NeoGenomics transaction, Stifel followed up, at Inivata's request, by reaching out to multiple additional contacts in an attempt to find investors for the follow-on financing. Inivata's Chief Executive Officer subsequently reached out to Stifel for updates on the status of Stifel's contacts with prospective investors. Stifel's efforts did not result in a financing transaction, but at no point did Inivata express dissatisfaction with Stifel's work or efforts, and again Inivata did not terminate its engagement of Stifel under the Agreement.

20. Instead, in violation of the terms of the Agreement, Inivata engaged in discussions with investors on its own, wholly apart from Stifel. This conduct was a

7

breach of the provision in the Agreement under which Inivata promised that "it will not initiate or engage in any discussions relating to a Financing during the term of this Agreement except through Stifel [and Inivata's advisor in Asia]." Ex. A, Section IIC, p. 2. Notwithstanding this provision, Inivata initiated and engaged in discussions relating to a Financing without using or even consulting Stifel (or Inivata's Asia advisor). In fact, Inivata closed the $35 Million Financing Transaction in February 2021 without informing Stifel in advance. Stifel first learned of the transaction through Inivata's February 4, 2021 press release, which further disclosed the fact that two of the lead investors were Soleus and Janus, entities that Stifel had previously introduced to Inivata. *See* Ex. B.

21. Stifel duly performed its obligations under the Agreement and was prepared to assist Inivata in arranging for the follow-on financing, but Inivata breached the Agreement by not disclosing its negotiations or the closing of the $35 Million Financing Transaction until after the fact, apparently in an effort to avoid paying Stifel the fee to which it was entitled under the Agreement.

22. On or about March 31, 2021, Stifel sent Inivata an invoice seeking payment of $1,934,367.70, which included $1,925,000 for the Placement Fee calculated under the terms of the Agreement plus $ 9,367.70 for out-of-pocket expenses incurred by Stifel, which were reimbursable under the terms of the Agreement.

23. Despite various communications by Stifel and/or its counsel to Inivata seeking payment of the amounts due under the Agreement, Inivata has refused to pay Stifel the fee and expenses demanded.

24. Inivata has offered various excuses for its non-payment, including claiming that Stifel did not assist and refused to assist Inivata. This claim is completely

false. As described above, Stifel personnel performed hundreds of hours of work for Inivata and incurred expenses for which it has received no compensation. Inivata closed the $35 Million Financing Transaction without assistance from Stifel because it chose not to disclose to Stifel that it had initiated and engaged in discussions concerning that transaction, in violation of the express terms of the Agreement. Regardless, Inivata cannot avoid the express provision in the Agreement that obligates Inivata to pay Stifel the fee provided for thereunder "whether or not such Financing or Commitment was arranged through Stifel."

25. In addition, Inivata has self-servingly claimed that the $35 Million Financing Transaction was not covered by the Agreement, but the transaction plainly falls within the scope of the Agreement's terms, and it is undisputed that the Agreement was in effect at the time of the closing of the transaction and was not terminated.

26. Inivata has thus breached the Agreement, and owes compensatory damages to Stifel and payment of all costs incurred by Stifel, including attorneys' fees and expenses, in accordance with the terms of the Agreement.

## CLAIM FOR RELIEF

### Count I
### (Breach of Contract)

27. The allegations of paragraphs 1 through 26 inclusive are realleged as though fully set forth herein.

28. By virtue of the foregoing, Inivata breached the Agreement because it failed to pay Stifel the fee owed with respect to the $35 Million Financing Transaction and Stifel's out-of-pocket expenses due and owing under the Agreement.

28. Stifel duly complied with the terms and conditions of the Agreement.

29. Inivata's breach of the Agreement has caused Stifel to incur monetary damages in the amount of $1,934,367.70.

30. Under the terms of the Agreement, Stifel is also entitled to the costs of its collection of the amounts set forth above, including its attorneys' fees and expenses.

WHEREFORE, Plaintiff Stifel, Nicolaus & Company, Inc. respectfully seeks judgment: (i) awarding monetary damages in an amount to be determined at trial but in an amount not less than $1,934,367.70, plus pre-and post-judgment interest and all costs incurred by Stifel in collecting these sums, including attorneys' fees and expenses; and (ii) such other and further relief as the Court deems appropriate.

Dated: New York, New York
       May 11, 2021

                                  Respectfully submitted,

                                  MURPHY & McGONIGLE, P.C.

                        By:    /s/Theodore Snyder
                              Theodore R. Snyder
                              Heather B. Middleton
                              1185 Avenue of the Americas, 21st Floor
                              New York, NY 10036
                              (212) 880-3976
                              tsnyder@mmlawus.com

                              Attorneys for Plaintiff
                              Stifel, Nicolaus & Company, Inc.